IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANDREW COWLEY, et al. | : | CONSOLIDATED UNDER |
|---|---|---|
| | : | MDL 875 |
| Plaintiffs, | : | CIVIL ACTION |
| | : | NO. 07-62831 |
| v. | : | |
| | : | Transferred from the District |
| | : | of Maryland |
| ACANDS, INC., et al., | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    DECEMBER 23, 2010

This is an asbestos personal injury case. Before the Court is the Motion for Summary Judgment of Defendant MCIC, Inc. f/k/a McCormick Asbestos Co. ("MCIC"). The issues to be addressed by the Court include: (1) whether a deposition of a witness taken in a prior action is admissible against a party in a later action who was not a party in the earlier action, and (2) whether Plaintiff has presented sufficient evidence that Andrew Cowley was exposed to asbestos-containing products supplied by MCIC on a frequent and regular basis. Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332. The issue of the admissibility of depositions in the federal courts is a matter of procedure and thus is controlled by federal law. See King v. E.I. Dupont De Nemours & Co., No. 875, 2010 WL 3419572 at *2-3 (E.D. Pa. Aug. 25, 2010) (citing Hanna v. Plumer,

1

380 U.S. 460, 471-72). The sufficiency of the evidence on the issue of asbestos exposure and product identification is a matter of substantive law and thus is controlled, in this case, by Maryland law. Id.

An often repeated scenario in personal injury asbestos litigation involves the admissibility of deposition testimony taken in an earlier action against a defendant who was not a party to the earlier litigation. This is understandable given the long latency period of various diseases caused by exposure to asbestos fibers. Under the circumstances, the plaintiff may be deceased and the testimony of a co-worker in an earlier action may constitute the sole product identification evidence. The answer to the question admittedly is not clear cut and ultimately, the admissibility of such deposition testimony depends largely upon whether, at the time the deposition was taken, the interests of the defendant in the earlier litigation could be considered aligned with the interests of the defendant in the present case against whom the deposition is being offered.

**I.  Facts**

Mr. Cowley brought suit against various defendants, including MCIC, alleging occupational asbestos exposure. (Def.'s Mot. Summ. J., doc. no. 24 ¶ 1). MCIC was primarily an insulation contractor. (Def.'s Mot. Summ. J., doc. no. 27 at 2). This case

was transferred to the Eastern District of Pennsylvania as part of MDL 875 on February 13, 2007. (Transfer Order, doc no. 1). Mr. Cowley was deposed on January 9, 1986 and on August 4, 1998, but MCIC was not present at either deposition. (Def.'s Mot. Summ. J. at 6). Both depositions were taken in a prior unrelated asbestos case where Mr. Cowley was testifying as a coworker of another asbestos plaintiff. (Transcript of Oral Argument at 9, Cowley v. ACANDS, Inc., (E.D. Pa. Dec. 7, 2010)).

Mr. Cowley began working at the Bethlehem Steel Key Highway Shipyard on January 21, 1941 as a welder and burner. (Pl.'s Reply Br., doc. no. 28 at 14; Cowley Depo., doc. no. 28-1 at 9). From 1942 until 1945, Mr. Cowley served in the U.S. Army. (Cowley Depo. at 11). He then resumed working as a welder and burner at the Bethlehem Steel Key Highway Shipyard until he retired in 1982. (Id.). Mr. Cowley spent approximately 85% of his time working aboard the ships and the remaining 15% of the time working in the shipyard's shop. (Id. at 10).

Plaintiff offers the testimony of Harry Myers, who worked at the Bethlehem Steel Key Highway Shipyard as a pipefitter from 1964 until 1981. Mr. Myers' deposition was taken in a prior unrelated asbestos case and MCIC was present for the deposition.[1] Mr. Myers testified that several outside contractors, including

---

[1] The admissibility of Mr. Myers' deposition is not at issue in this case.

MCIC, were used to perform pipe-covering or lagging. (Pl.'s Reply Br., at 17; Myers Depo. at 8-13). Mr. Myers testified that McCormick was one of the contractors installing new asbestos pipe-covering on the Calmar line. (Pl.'s Reply Br. at 17-18). However, Mr. Myers was not asked and, therefore, did not testify as to whether he witnessed Mr. Cowley working aboard the Calmar line of ships or whether Mr. Cowley worked around MCIC employees aboard these ships.[2] Mr. Myers' testimony places MCIC employees working with asbestos aboard the Calmar line of ships, but it does not place Mr. Cowley there. Thus, Plaintiff must rely upon Mr. Cowley's deposition testimony in the earlier action to show that Mr. Cowley worked aboard the Calmar line of ships.

In the earlier action, Mr. Cowley was a witness in a case involving a co-worker. At the deposition, Mr. Cowley testified that from 1969 until 1974, he spent the majority of his time working aboard the Calmar line of ships. (Cowley Depo., doc. no. 28-2 at 60). He worked aboard the Maramar, Penmar, Calmar, Ormar, and Portmar. (Id. at 60-61).

Mr. Cowley also testified that he worked directly with

---

[2] Plaintiffs also rely on invoices to establish that MCIC supplied asbestos-containing products and had insulators working at the Bethlehem Steel Key Highway Shipyard during the time that Mr. Cowley worked at the Bethlehem Steel Key Highway Shipyard. (Pl.'s Reply Br. at 20).

asbestos and that he worked around "laggers"[3] who were installing asbestos-containing pipecovering. (Pl.'s Reply Br. at 14-15). When asked whether Mr. Cowley remembered the names of any outside contractors at the Bethlehem Steel Key Highway Shipyard, Mr. Cowley stated, "Wallace and Gayle is the only one I can tell you, but then later on there were other ones that came in, but I don't know their names." (Cowley Depo., doc. no. 28-3 at 95-96). He testified that he was exposed to asbestos while working on these ships, but was not questioned about working near MCIC employees. (Id. at 61-62).

Therefore, the issue becomes whether Mr. Cowley's testimony from the earlier action in which MCIC was not a party may be admitted to show that he was present aboard the Calmar line of ships during the time when Mr. Myers testified that MCIC's employees working with asbestos-containing products were present aboard the Calmar line of ships.

---

[3]"Laggers" were responsible for installing pipe-covering aboard ships at the Bethlehem Steel Key Highway Shipyard. (Transcript of Oral Argument at 19, Cowley v. ACANDS, Inc., (E.D. Pa. Dec. 7, 2010).

**II. Whether a deposition of a witness taken in a prior action is admissible against a party in a later action who was not present for the deposition**

Federal Rule of Evidence 804(b)(1) provides that if the party offering the evidence establishes that the declarant is deceased, former testimony is not excluded under the general rule disallowing the admission of hearsay.[4] Former testimony is

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil proceeding, **a predecessor in interest, had an opportunity and similar motive to develop to testimony by direct, cross, or redirect examination**.

FED. R. EVID. 804(b)(1) (emphasis added).

In <u>Lloyd v. American Export Lines, Inc.</u>, the United States Court of Appeals for the Third Circuit broadly construed the term "predecessor in interest" under Federal Rule of Evidence 804(b)(1). In <u>Lloyd</u>, Roland Alvarez and a fellow crew member, Frank Lloyd, had an altercation on a Coast Guard ship, the SS Export Commerce. 580 F.2d 1179, 1181 (3d Cir. 1978). Lloyd filed an action against Export alleging negligence. <u>Id.</u> The Coast Guard conducted an extensive hearing ultimately charging Lloyd with several offenses. <u>Id.</u> at 1182-83. Testimony was taken under oath

---

[4] Federal Rule of Civil Procedure 32(a)(8) could have provided an alterative path for the admissibility of Mr. Cowley's deposition. Plaintiff has not sought admissibility under that rule. Therefore, the Court will not consider it.

6

and parties were subject to direct and cross examination. Id.

In a subsequent civil trial brought by Alvarez against Lloyd to collect damages, Lloyd was unavailable and Alvarez objected to the admission of Lloyd's testimony from the Coast Guard hearing. Id. at 1184. In determining whether Lloyd's testimony was admissible under Federal Rule of Evidence 804(b)(1), the Court reasoned, "[a]lthough Congress did not furnish us with a definition of 'predecessor in interest,' our analysis of the concepts of interest satisfies us that there was sufficient community of interest shared by the Coast Guard and Alvarez in the subsequent civil trial to satisfy Rule 804(b)(1)." Id. at 1185-85. The Court concluded that "[i]rrespective of whether the interests be considered from the individual or public viewpoints . . . the nucleus of operative facts was the same - the conduct of Frank Lloyd and Roland Alvarez aboard the SS Export Commerce." Id. at 1186. The Court adopted the view that, "if it appears that in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party." Id. at 1187 (internal citations omitted).

Applying Lloyd to the instant case, the Court concludes that the defendants' questioning of Mr. Cowley as a co-worker witness in the earlier action did not share a "community of interest"

7

with MCIC such that those defendants could be determined to be "predecessors in interest" to MCIC.[5] This is so because the defendants in the earlier action did not have a sufficient motive to cross-examine Mr. Cowley about the presence of MCIC employees aboard the Calmar line of ships. In fact, the inquiry would have been irrelevant since Mr. Cowley was a witness and not a plaintiff in the prior suit. On the other hand, MCIC, if present at the deposition in the earlier action would have had the opportunity and motive to question Mr. Cowley as to when, specifically, he did work aboard the Calmar line of ships and his proximity to MCIC employees working with asbestos-containing products.

Duca v. Raymark Industries is illustrative of the application of Lloyd. No. 84-0587, 1986 U.S. Dist. LEXIS 20233 at *4 (E.D. Pa. Sept. 18, 1986). The Duca court noted a distinction between testimony which is being offered for a general factual purpose and testimony which is being offered to support specific

---

[5] In oral argument, Plaintiff asserted that Pittsburgh Corning and Owens-Corning had the same motives as MCIC since these companies had a distributorship agreement with MCIC. (Transcript of Oral Argument at 7-8, Cowley v. ACANDS, Inc., (E.D. Pa. Dec. 7, 2010)). There is no evidence on the record showing that there was a distributorship agreement. Moreover, even if there was such an agreement, these defendants would not have a similar motive in cross-examining Mr. Cowley as a co-worker as they would in cross-examining him as a plaintiff.

claims of product identification.[6] In Duca, Plaintiffs sought to admit product identification evidence identifying Pittsburgh-Corning from the deposition of Dr. Gaze. Id. Plaintiffs sought to admit this evidence against defendant Pittsburgh-Corning, who was not present for Dr. Gaze's deposition. Id. Plaintiffs argued that PPG, who was present at the deposition, was a "predecessor in interest" of Pittsburgh-Corning under Federal Rule of Evidence 804(b)(1). Id. at *5 (citing Lloyd, 580 F.2d at 1187). The Court noted that while the interests of PPG and Pittsburgh-Corning were not aligned as to issues of product identification, they were aligned as to general factual issues. Id. at *3 n.1. Since Dr. Gaze's testimony involved product identification, it was held inadmissible under Federal Rule of Evidence 804(b)(1).

In this case, Mr. Cowley's deposition testimony is not of a general nature, but rather supports Plaintiff's claims as to product identification about a specific defendant. Under these circumstances, Mr. Cowley's deposition testimony as to exposure

---

[6]While some courts have allowed depositions to be used against parties not present for those depositions, these cases are distinguishable from the instant case as the testimony at issue was general medical testimony and not product identification testimony. See Clay v. Johns-Manville Sales Corp., 722 F.2d 1289, 1294-95 (6th Cir. 1983) (allowing in deposition of Dr. Smith since defendants in the pending action had a similar motive to defendants who attended Dr. Smith's deposition in the prior action); see also Dartez v. Fibreboard Corp., 765 F.2d 456, 462 (5th Cir. 1985) (holding that even if the doctor deposition at issue was not admissible under Federal Rule of Evidence 804(b)(1), it was admissible under the residual exception to the hearsay rule, Federal Rule of Evidence 804(b)(5)).

9

and product identification is inadmissible.

**III.     Whether Plaintiff has presented sufficient evidence that Mr. Cowley was exposed to asbestos-containing products supplied by MCIC on a frequent and regular basis.**

This Court has determined that Mr. Cowley's deposition testimony constitutes inadmissible hearsay under Federal Rule of Evidence 804(b)(1).  Therefore, this evidence will not be considered in deciding MCIC's Motion for Summary Judgment.  This Court must now determine whether, in the absence of Mr. Cowley's deposition testimony, Plaintiff has presented sufficient product identification evidence to survive Defendant MCIC's Motion for Summary Judgment.

A.   <u>Legal Standard</u>

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c)(2).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. <u>Id.</u> at

248-49. "In considering the evidence the court should draw all reasonable inferences against the moving party." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In Eagle-Picher Industries, Inc. v. Balbos, two shipyard workers alleged that they had contracted mesothelioma due to exposure to several defendants asbestos-containing products at different Bethlehem Steel Shipyards. 604 A.2d 445, 449 (Md. 1992). In considering whether Eagle's powder, which contained asbestos, was a substantial cause of either plaintiffs' mesothelioma, the court noted that, "evaluation of that argument

requires an appreciation of the workplace environment of each decedent." Id. at 457. The court determined that direct evidence of exposure is not required and that rather, circumstantial evidence can be sufficient. Id. at 460 (citing Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1228 (4th Cir. 1986)). The court determined that,

> [w]hether the exposure of any given bystander to any particular supplier's product will be legally sufficient to permit a finding of substantial-factor causation is fact specific to each case. The finding involves the interrelationship between the use of a defendant's product at the workplace. This requires an understanding of the physical characteristics of the workplace and of the relationship between the activities of the direct users of the product and the bystander plaintiff. (Internal citation omitted). Within that context, the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and in time, of a plaintiff to the use of a product, and the regularity of the exposure of that plaintiff to the use of that product. (See Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir. 1986); other internal citations omitted). In addition, trial courts must consider the evidence presented as to medical causation of the plaintiff's particular disease. (Internal quotations omitted).

Balbos, 604 A.2d at 460. In AC&S, Inc. v. Godwin, the Court of Appeals of Maryland applied the "frequency, regularity, and proximity" test in deciding the appeals of three plaintiffs who had never worked directly with asbestos-containing products. 667 A.2d 116, 123 (Md. 1995). Plaintiffs presented product identification witnesses who identified Defendant's product as being used at the Bethlehem Steel plaint and indicated that

12

outside contractors were in the vicinity when these products were used. Id. Russell, one of the plaintiffs in Godwin, was a pipefitter who worked for various contractors at Bethlehem Steel. Id. at 125. Russell testified that he worked at certain mills at Bethlehem Steel. Id. Russell testified that he was exposed to asbestos, but could not recall the names of any manufacturers. Id. There was also evidence that Bethlehem Steel pipe coverers used asbestos during the time Russell worked there and that Russell worked in proximity to Bethlehem Steel employees. Id. at 125-26. The court found that there was sufficient evidence of substantial causation to take the case to the jury on the behalf of Russell. Id. at 126.

In Reiter v. Pneumo Abex, LLC, the Maryland Court of Appeals granted defendants' motions for summary judgment as to several plaintiffs' bystander claims. No. 72, 2010 WL 4670579 at *5 (Md. Nov. 19, 2010). Plaintiffs each presented evidence that they had worked in certain mills at the Bethlehem Steel Sparrows Point facility and that defendants' asbestos-containing brakes were in these mills. Id. at *2. The court held that taking into account the "massive cavernous size" of the facilities as well as the distance from laborers to the braking systems on the cranes" plaintiffs failed to present sufficient evidence of proximity to survive summary judgment. Id. at *5.

In summation, the Court of Appeals of Maryland has liberally

13

applied the "frequency, regularity, and proximity" test and allowed plaintiffs to survive summary judgment with circumstantial evidence of exposure. However, the Court of Appeals of Maryland has required plaintiffs to identify their specific area of exposure and has considered the size of the facility at issue in determining whether plaintiffs have shown proximity through circumstantial evidence of exposure.

    B.    <u>Discussion</u>

The only evidence cited to in Plaintiff's brief to show that Mr. Cowley worked at the Bethlehem Steel Key Highway Shipyard is Mr. Cowley's deposition which is inadmissible hearsay under Federal Rule of Evidence 804(b)(1). Moreover, even if Plaintiff could establish that Mr. Cowley worked at the Bethlehem Steel Key Highway Shipyard, Plaintiff has not presented any evidence placing Mr. Cowley at a specific location within this large facility. Without Mr. Cowley's deposition testimony that he worked aboard the Calmar line of ships, Plaintiff has merely presented evidence that MCIC employees were present somewhere within the Bethlehem Steel Key Highway Shipyard and that Mr. Cowley was also present somewhere within this facility. The <u>Balbos</u> court noted that in applying the frequency, regularity, and proximity test, the court should consider the physical characteristics of plaintiff's workplace and what type of work people around the plaintiff are completing. 604 A.2d at

14

460. As Plaintiff has presented no admissible evidence that Mr. Cowley was ever in proximity to MCIC employees working with asbestos-containing products, Defendant MCIC's Motion for Summary Judgment is granted.

**IV.  Conclusion**

MCIC's Motion for Summary Judgment is granted since without Mr. Cowley's deposition, Plaintiff has presented no evidence establishing that Mr. Cowley worked in proximity to MCIC employees working with asbestos-containing products at the Bethlehem Steel Key Highway Shipyard.

An appropriate order follows.